# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 22, 2010 Session

## MICHAEL TODD HIGHFILL v. HEATHER (HIGHFILL) MOODY

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-000785-09    Karen R. Williams, Judge

### No. W2009-01715-COA-R3-CV - Filed May 25, 2010

This case arises from a petition to enroll and modify a foreign decree on child visitation and support. Appellant/Father petitioned the Circuit Court at Shelby County to enroll and modify an Arkansas decree. Mother/Appellee contested the petition, alleging that she was still a resident of Arkansas, so that Arkansas retained exclusive, continuing subject matter jurisdiction. The trial court found that the Uniform Interstate Family Support Act was applicable, and also found that Mother was still residing in Arkansas so as to bar subject matter jurisdiction in favor of the Tennessee court. Because the case involves a petition to modify both child visitation and child support, we conclude: (1) that both the Uniform Interstate Family Support Act, and the Uniform Child Custody Jurisdiction and Enforcement Act are applicable,(2) that the trial court erred in finding that the Mother was residing in Arkansas at the commencement of this action, and (3) the Tennessee Court has jurisdiction to modify the Arkansas decree on child support and custody, and (4) that the trial court erred in dismissing Father's petition to enroll, and modify the Arkansas decree. Reversed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Kathy Baker Tennison, Memphis, Tennessee, for the appellant, Michael Todd Highfill.

James D. Lawson, Memphis, Tennessee, for the appellee, Heather (Highfill) Moody.

## OPINION

Appellant Michael Todd Highfill and Appellee Heather Highfill Moody were divorced

on December 5, 2002, by order of the Circuit Court of White County, Arkansas (the "Arkansas Court"). One minor child was born to the marriage (d/o/b 11/8/2000). In its divorce decree, the Arkansas Court awarded custody of the child to Mr. Highfill, and ordered Ms. Moody to pay child support.

The Arkansas Court retained jurisdiction over the child custody and support matters and, following the entry of the divorce decree, several orders were entered concerning custody and support. By order of November 9, 2004, the Arkansas Court modified Ms. Moody's visitation schedule with the child. On September 22, 2005, the Arkansas Court entered an order for relocation, which allowed Mr. Highfill to move, with the minor child, to Memphis. This order also modified Ms. Moody's child support obligation. Sometime in late 2005, Ms. Moody apparently filed a motion to transfer venue to another Arkansas court. On October 4, 2005, Mr. Highfill filed a response, in which he argued that the original Arkansas Court was the best venue. On or about November 16, 2005, the Arkansas Court entered an order, denying Ms. Moody's motion to transfer venue. From the record, it appears that the last order entered by the Arkansas Court was on November 30, 2005. This was a wage assignment, ordering Ms. Moody's employer to withhold child support payments.

On February 18, 2009, Mr. Highfill filed, in the Circuit Court at Shelby County (the "Tennessee Court"), a petition for enrollment, enforcement and modification of the Arkansas divorce decree. In his petition, Mr. Highfill alleged that, since the entry of the divorce decree in Arkansas, both he, the child, and Ms. Moody had become residents of Shelby County, Tennessee. Specifically, Mr. Highfill stated that he and the child had resided in Memphis since December of 2007, and that Ms. Moody had resided in Shelby County since December 1, 2008. As a result of the alleged change, Mr. Highfill averred that the Arkansas Court had lost its jurisdiction, and that jurisdiction was now held by the Tennessee Court. By his petition, Mr. Highfill asked the Tennessee Court to: (1) enroll the decree of divorce and child support and custody orders, thereby assuming jurisdiction over the case; (2) to modify child support in accordance with the Tennessee Child Support Guidelines and to order Ms. Moody to contribute to the child's private school tuition; and (3) to modify the parties' visitation schedule by adopting Mr. Highfill's proposed permanent parenting plan. On March 3, 2008, Ms. Moody filed a response to Mr. Highfill's petition, wherein she denied that she was a resident of Shelby County, and specifically averred that her legal residence "has been, and continues to be, in the State of Arkansas." Consequently, Ms. Moody argued that the Arkansas Court had not lost its exclusive jurisdiction over child custody and support matters, and asked the Tennessee Court to decline enrollment and modification of the Arkansas decree.

On May 29, 2009, the Tennessee Court entered an order, purporting to enroll the Arkansas decree pursuant to Tenn. Code Ann. §§26-6-101 to -107. By order of March 19,

2009, the Tennessee Court bifurcated the issues raised in Mr. Highfill's petition, and ordered a separate hearing on the enrollment and enforcement of the Arkansas Court's decree. This hearing occurred on July 15, 2009. By Order of August 11, 2009, the Tennessee Court denied Mr. Highfill's petition to enroll the Arkansas decree, although, as discussed below, it appears that the Arkansas decree was already enrolled by the Tennessee Court's May 29, 2009 order. In reaching its decision, the Tennessee Court specifically found:

> 1. That this case is controlled by the Uniform Interstate Family Support Act ("UIFSA") such that T.C.A. § 36-5-2611 is applicable regarding modification of a child support order of another state.

> 2. That [Ms. Moody] works as a nurse and took thirteen (13) week assignments in Jacksonville, North Carolina from April, 2008 to July, 2008, in Arizona from August, 2008 to November, 2008 and in Memphis, Tennessee from December, 2008 to March 1, 2009. [Ms. Moody] was personally served with the current Petition in Memphis, Tennessee on February 26, 2009. [Mr. Highfill] asserts that [Ms. Moody] left the State of Arkansas to reside elsewhere for the period from April, 2008 to March, 2009. [Ms. Moody] asserts that she "temporarily resided" outside the State of Arkansas while maintaining her permanent residence in Arkansas.

> The Court finds, as a matter of law, that [Ms. Moody] continued to reside in Arkansas based upon the laws of residency, this Court having found that no definition of "reside" or "residence" exists unique to the controlling statute. By way of example, [Ms. Moody] maintained her nursing license and driver's license in Arkansas. The Court concludes that residence is where you live rather than where you have your suitcase....

> [Ms. Moody] has, at all relevant times, been a resident of the State of Arkansas, and the Circuit Court of White County, Arkansas has maintained continuing jurisdiction over this cause of action at all times. Therefore, the Arkansas Divorce Decree for Child Custody and Child Support may not be enrolled and enforced by the Shelby County Circuit Court.

Mr. Highfill appeals, and raises one issue for review as stated in his brief:

> Whether the trial court erred in denying enrollment and modification of the Arkansas custody and support decrees when the child and both parents lived in Tennessee at the time the Petition was filed.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). With respect to the trial court's conclusions on matters of law or on mixed questions of fact and law, however, our review is *de novo* with no presumption of correctness. *See **Bowden v. Ward**, 275 S.W.3d 913, 916 (Tenn.2000); **Nash-Putnam v. McCloud**, 921 S.W.2d 170, 174 (Tenn.1996); Tenn. R. App. P. 13(d).

It is also well settled that this Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate for a meaningful review. Tenn. R. App. P. 24(b). Here, there is no transcript of the July 15, 2009 hearing on the question of enrollment of the Arkansas decree; however, pursuant to Tenn. R. App. P. 24(c), Mr. Highfill filed a statement of the evidence on October 22, 2009. An amended statement of the evidence was filed on November 3, 2009. From our review of the record, no objection to the statement of the evidence was filed by Ms. Moody, as allowed under Tenn. R. App. P. 24(c).

This appeal focuses on the jurisdiction of the Tennessee Court to adjudicate Mr. Highfill's petition to modify child custody and support orders entered by the Arkansas Court. The concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy. *See, e.g., **Osborn v. Marr**, 127 S.W.3d 737, 739 (Tenn. 2004). A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts. *See, e.g., **Meighan v. U.S. Sprint Commc'ns Co.**, 924 S.W.2d 632, 639 (Tenn.1996). The parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. ***State ex rel. Dep't of Soc. Servs. v. Wright**, 736 S.W.2d 84, 85 n. 2 (Tenn.1987); **Team Design v. Gottlieb**, 104 S.W.3d 512, 527 (Tenn. Ct. App. 2002).

The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. ***Landers v. Jones**, 872 S.W.2d 674, 675 (Tenn.1994). Thus, when a court's subject matter jurisdiction is questioned, it must first ascertain the nature or gravamen of the case. ***Newsome v. White**, No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *2 (Tenn. Ct. App. Dec.22, 2003 (No Tenn. R. App. P. 11 application filed).

As set out in its order, the Tennessee Court determined that the Uniform Interstate Family Support Act ("UIFSA"), as opposed to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), was applicable to this case. As discussed above, by his petition, Mr. Highfill sought enrollment of the Arkansas decree, as well as modification of both visitation and child support. Based upon this pleading, and the specific relief sought therein, we will first address whether the trial court erred in applying the UIFSA to determine whether the Tennessee Court had jurisdiction to enroll and/or modify the Arkansas order.

## Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")

As discussed by this Court in *Staats v. McKinnon*, 206 S.W.3d 532 (Tenn. Ct. App. May 2, 2006), perm. app. denied (Tenn. Oct. 16, 2006), the UCCJEA is a detailed jurisdictional statute, to wit:

> Promulgated in 1997 by the National Conference of Commissioners on Uniform State Laws, it establishes standards for the initial entry of child custody determinations that will be entitled to full faith and credit in all fifty states as a matter of federal law, specifies the circumstances under which a state court can modify another state's child custody determination, and provides expedited procedures for the enforcement of both initial and modified child custody determinations.

*Staats v. McKinnon*, 206 S.W.3d 532, 544. (Footnotes omitted).

Under the UCCJEA, a court confronted with a petition to modify another state's child custody order must first decide whether the state that made the initial custody determination retains exclusive, continuing jurisdiction. Tenn. Code Ann. § 36-6-218(1)-(2). The court has subject matter jurisdiction to modify the other state's child custody determination "only if the other state has lost its exclusive, continuing jurisdiction or declined to exercise it." *Staats v. McKinnon*, 206 S.W.3d 532, 548. As discussed in *Staats*, the UCCJEA analysis is actually a three-step process. After determining whether the court that made the initial custody determination has lost its jurisdiction, the court must decide whether it would have jurisdiction to make an initial custody determination under the circumstances of the case. *Staats v. McKinnon*, 206 S.W.3d 532, 548 (citing Tenn. Code Ann. § 36-6-218).Once a court determines that it has subject matter jurisdiction under the first two steps of the jurisdictional analysis, it must then proceed to the third step and determine whether it may or must decline to exercise its modification jurisdiction on one of the three grounds specified in the UCCJEA. *Id.* (citing Tenn. Code Ann. §§ 36-6-221 to -223).

Concerning the question of when the court that entered the initial custody order has lost its jurisdiction, Tenn. Code Ann. §36-6-218 provides:

> Except as otherwise provided in § 36-6-219[1], a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under § 36-6-216(a)(1) or (2), and:
>
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36-6-217 or that a court of this state would be a more convenient forum under § 36-6-221; or
> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.[2]

Pursuant to statutory scheme, a state that has made or modified a child custody determination in accordance with the UCCJEA's jurisdictional requirements retains exclusive, continuing jurisdiction over the determination until one of two things occurs. First, a state loses exclusive, continuing jurisdiction "if a court of that state determines that neither the child, nor at least one parent or person acting as a parent continues to have a significant connection with the state and that substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in the state." ***Staats v. McKinnon***, 206 S.W.3d 532, 548 (citing Tenn. Code Ann. § 36-6-217(a)(1), -218(1)).[3] Second, a state loses exclusive, continuing jurisdiction if a court of any state determines that "the child, the child's parents, and any person acting as a parent do not presently reside" in the state. ***Id***. (citing Tenn. Code Ann. §§ 36-6-217(a)(2), -218(2)). The comments to Tenn. Code Ann. §36-6-218 state, in relevant part that:

The modification State is not authorized to determine that the

---

[1] This statute addresses temporary, emergency jurisdiction, which is not at issue in this case.

[2] Ark. Code Ann. §9-19-203 is identical to Tenn. Code Ann. §36-6-218.

[3] The UCCJEA defines a "Person acting as a parent" as someone other than a parent who "[h]as ... or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding" and "[h]as been awarded legal custody by a court or claims a right to legal custody under the law of this state." Tenn. Code Ann. § 36-6-205(13)(A)-(B).

original decree State has lost its jurisdiction. *The only exception is when the child, the child's parents, **and** any person acting as a parent do not presently reside in the other State*. In other words, a court of the modification State can determine that all parties have moved away from the original State. The court of the modification State must have jurisdiction under the standards of Section 201.[4]

*Id*. (Emphasis added).

### Uniform Interstate Family Support Act ("UIFSA")

The UIFSA, Tenn. Code Ann. § 36-5-2201, *et seq.*, "controls the establishment, enforcement, or modification of support orders across state lines. [The] UIFSA is intended to 'recognize that only one valid support order may be effective at any one time.'" ***LeTellier v. LeTellier***, 40 S.W.3d 490, 493 (Tenn. 2001) (citing Unif. Interstate Family Support Act, U.L.A. (1996) (prefatory notes)). The key to promoting the UIFSA's intent is the concept of "continuing exclusive jurisdiction." ***Id.*** A state that issues a support order has continuing exclusive jurisdiction over that order. No other state may modify that order so long as the issuing state maintains its continuing, exclusive jurisdiction. Tenn. Code Ann. § 36-5-2205; *see also **Young v. Godfrey***, No. M2007-02308-COA-R3-CV, 2008 WL 5330487 (Tenn. Ct. App. Sept. 3, 2008). Under the UIFSA, the issuing tribunal retains continuing, exclusive jurisdiction over a child support order except in narrowly defined circumstances. Tenn. Code Ann. §36-5-2205 provides, in relevant part:

> (a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child-support order:
> (1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
> (2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive

---

[4] Courts give substantial deference to the "Comments to Official Text" contained throughout the UIFSA. *LeTellier*, 40 S.W.3d at 493, n. 2. Although the comments are not binding, they are "very persuasive in interpreting the statute to which they apply." *Id*. (quoting ***Smith v. First Union Nat'l Bank***, 958 S.W.2d 113, 116 (Tenn. Ct. App.1997)). The relevant portion of the official comments to Ark. Code Ann. §9-19-203 are identical to the comments to Tenn. Code Ann. §36-6-218.

jurisdiction.

Arkansas' version of the statute, found at Ark. Code Ann. §9-17-205, is identical to Tenn. Code Ann. §36-5-2205. As discussed in the comments to Tenn. Code Ann. §36-5-2205:

> As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order--which in practical terms means that it may modify its order. The statute attempts to be even-handed--the identity of the remaining party--obligor or obligee--does not matter. If the individual parties have left the issuing state but the child remains behind, continuing, exclusive jurisdiction remains with the issuing state.

> The other side of the coin follows logically. Just as Subsection (a)(1) defines the retention of continuing, exclusive jurisdiction, by clear implication the subsection also defines how jurisdiction to modify may be lost. That is, if all the relevant persons--the obligor, the individual obligee, and the child--have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that state have no reason to expend public funds on the process.[5]

Accordingly, Tenn. Code Ann. § 36-5-2611(a) confers subject matter jurisdiction on a Tennessee court to modify a sister state's child support order as follows:

> (a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if § 36-5-2613 does not apply and after notice and hearing it finds that:

> (1) The following requirements are met:
> (A) *The child, the individual obligee, and the obligor do not*

---

[5] The comments to Ark. Code. Ann. §9-17-205 are identical to the comments to Tenn. Code Ann. §36-5-2205.

-8-

*reside in the issuing state*;

(B) A petitioner who is a nonresident of this state seeks modification; and

(C) The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(2) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order....

*Id*. (emphasis added).

In short, "[a] Tennessee court may not modify a child support order from another state unless that state has lost its continuing, exclusive jurisdiction because neither parent nor the child still resides in that state or the parties consent in writing for another state to assume jurisdiction to modify." ***Cliburn v. Bergeron***, Nos. M2002-01386-COA-R3-CV, M2001-03157-COA-R3-CV, 2002 WL 31890868 (Tenn. Ct. App. Dec. 31, 2002) (relying upon Tenn. Code Ann. § 36-5-2205; Tenn. Code Ann. § 36-5-2205 cmt.).

## Applicability of UCCJEA and/or UIFSA to Present Case

As this Court has cautioned, it is important to separate the issue of custody from that of child support, to wit:

> Interstate jurisdictional questions involving child support and arrearage matters are governed by the Uniform Interstate Family Support Act ("UIFSA"), Tenn.Code Ann. § 36-5-2001 et seq. Proceedings to determine parentage are also governed by the UIFSA. Tenn. Code Ann. § 36-5-2301(a)(6) and 2701. Interstate jurisdictional questions involving custody and visitation, on the other hand, are governed by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tenn. Code Ann. § 36-6-201 et seq.

***In re J.B.W.***, No. M2007-02541-COA-R9-CV, 2007 WL 4562885, at *1 (Tenn. Ct. App. Dec. 27, 2007), perm. app. denied (Tenn. April 7, 2008). It is further recognized that "these two uniform acts-one governing child support and the other governing child custody and visitation-can create 'parallel proceedings in different states' which can in turn potentially

lead to the 'awkward' and unsatisfactory severance of custody from child support." ***State ex rel. Strickland v. Copley***, No. W2007-01839-COA-R3-CV, 2008 WL 3875425, at *4 (Tenn. Ct. App. Aug. 21, 2008) (citing ***Straight v. Straight***, 195 S.W.3d 461, 466-67 (Mo. Ct. App.2006)).

In filing his petition with the Tennessee Court, Mr. Highfill sought modification of both child visitation and child support. Consequently, both the UCCJEA and the UIFSA are applicable to the present case–the UCCJEA is applicable to the modification of the visitation schedule; the UIFSA is applicable to the modification of child support. The trial court, therefore, erred in holding that only the UIFSA applied as a bar to subject matter jurisdiction. However, because we will affirm a judgment of a trial court if it is correct, even if the correct result is based on the wrong reason, ***Arnold v. City of Chattanooga***, 19 S.W.3d 779, 789 (Tenn. Ct. App.1999), this error is not fatal.

The Tennessee Court declined jurisdiction based upon its finding that Ms. Moody "continued to reside in Arkansas." As discussed in detail above, the applicable portions of the UIFSA are consistent with similar provisions of the UCCJEA in that both acts recognize the continuing, exclusive jurisdiction of the court that enters a child support order. *See* Tenn. Code Ann §§ 36-5-2205 & 2206. In particular, Tenn. Code Ann. § 36-5-2205(d) requires a Tennessee court to "recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child-support order pursuant to parts 20-29 [i.e., Tenn. Code Ann. §§ 36-5-2001 to -2902] or a law similar to parts 20-29." To this end, both acts prohibit a Tennessee court from modifying a child support, or child custody, order from another state unless that state has lost its continuing, exclusive jurisdiction. In determining whether the sister state has lost jurisdiction, the UCCJEA provides that continuing, exclusive jurisdiction to modify orders of custody ends "when the child, the child's parents, and any person acting as a parent *do not presently reside* in the other state." Tenn. Code Ann. §36-6-218 (emphasis added). Likewise, under the UIFSA, a court may not modify the support order of a sister state unless "the child, the individual obligee, and the obligor *do not reside* in the issuing state." Tenn. Code Ann. §36-5-2611(a)(1)(A) (emphasis added). The residence requirement for modification of foreign decrees, under both acts, is ostensibly the same. Under the plain language of the respective acts, in order for a Tennessee Court to obtain subject matter jurisdiction to modify both foreign orders on support and foreign orders on custody, neither parent, nor the child, may reside in the state that first issued those orders. That is, BOTH parents (or anyone acting as a parent) must not reside in the issuing state. Although the UIFSA omits the adverb "presently," the instant appeal does not turn on that small variance in these statutes. Rather, the gravamen here is whether Ms. Moody resides in Tennessee or, as the trial court found, in Arkansas. Because neither the UCCJEA, nor the UIFSA define "reside," we turn to the official comments to the statutes, to the case law, and to other sources to determine the proper interpretation thereof.

## "Reside" and the Continuing Exclusive Jurisdiction of Arkansas

As discussed above, "a state loses exclusive, continuing jurisdiction if a court of any state determines that the 'child, the child's parents, and any person acting as a parent do not presently reside' in that state." *Staats,* 206 S.W.3d at 548 (quoting Tenn. Code. Ann. §§36-6-217(a)(2), -218(2)). The official comments to Tenn. Code Ann. § 36-6-217 provide, in pertinent part, as follows:

> 2. *Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State*. The exact language of subparagraph (a)(2) was the subject of considerable debate.
>
> Ultimately the Conference settled on the phrase that a "court of this State or a court of another State determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State" to determine when the exclusive, continuing jurisdiction of a State ended. The phrase is meant to be identical in meaning to the language of the PKPA which provides that full faith and credit is to be given to custody determinations made by a State in the exercise of its continuing jurisdiction when that "State remains the residence of...." *The phrase is also the equivalent of the language "continues to reside" which occurs in UIFSA § 205(a)(1)* to determine the exclusive, continuing jurisdiction of the State that made a support order. The phrase "remains the residence of" in the PKPA has been the subject of conflicting case law. *It is the intention of this Act that paragraph (a)(2) of this section means that the named persons no longer continue to actually live within the State.* Thus, unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.
>
> *The phrase "do not presently reside" is not used in the sense of a technical domicile*. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State....Jurisdiction attaches at the

> commencement of a proceeding. If State A had jurisdiction
> under this section at the time a modification proceeding was
> commenced there, it would not be lost by all parties moving out
> of the State prior to the conclusion of a proceeding ....

Tenn. Code Ann. § 36-6-217 Cmt. 2 (emphasis added).

Relying upon Comment 2 to Tenn. Code Ann. § 36-6-217, the **Staats** Court opined that, "[d]etermining where an individual 'presently reside[s]' does not involve a technical inquiry into the individual's legal domicile under state law. Rather, the sole question is whether the relevant individuals 'continue to actually live within the state' or have 'physically le[ft] the state to live elsewhere.'" **Staats v. McKinnon**, 206 S.W.3d 532, 549 (citing Tenn. Code Ann. § 36-6-217 cmt.).

In **Staats**, it was undisputed that it had been eleven months since the child had lived in the issuing state and that it had been several years since either parent had lived in the issuing state. **Id**. Therefore, the exclusive, continuing jurisdiction of the issuing state had ceased. **Id**. at 549.

In **Arendale v. Arendale**, No. W2005-02755-COA-R3-CV, 2008 WL481943 (Tenn. Ct. App. Feb. 22, 2008), perm. app. denied (Tenn. May 19, 2008), a modification proceeding filed in Shelby County, the Mother challenged the subject matter jurisdiction of the Tennessee court to modify its prior custody order, alleging that the child and both parents had moved from Tennessee to Mississippi. This Court reversed the trial court, finding that all parties were residents of Mississippi even though the Mother retained a house in Memphis, retained her Tennessee driver's license, registered her car in Tennessee, and was registered to vote in Tennessee. **Id**. In holding that the Shelby County trial court had no subject matter jurisdiction to modify its prior custody order (despite Mother's various attachments to Tennessee), we reiterated the information found in Comment 2 to Tenn. Code Ann. §36-6-217, stating that "[t]he phrase 'do not presently reside' is not used in the sense of technical domicile." **Arendale**, 2008 WL 481943, at *5.

In **Jordan v. Jordan**, No. W2002-00854-COA-R3-CV, 2003 WL 1092877 (Tenn. Ct. App. Feb. 19, 2003), this Court applied the UCCJEA to affirm the trial court's enrollment and amendment of a foreign child custody order. Concerning whether the issuing state had lost its continuing, exclusive jurisdiction under the UCCJEA because neither parent, nor the child presently resided in the issuing state, this Court discussed the meaning of the term "reside":

> We first note that the statute at issue (T.C.A. § 36-6-218), and

specifically the second criterion outlined in that statute requires that the children, and the parents not presently reside in Alabama in order for a Tennessee court to have jurisdiction to modify the visitation decree. While we concede that Mr. Jordan's domicile remains in Alabama in that he has no present intention to permanently reside in another state, and while the evidence indicates that Mr. Jordan retains a residence in Alabama, the question before us is where Mr. Jordan presently resides. Black's Law Dictionary 1176 (5 th ed.1979) defines "reside" as follows:

> **Reside.** Live, dwell, abide, sojourn, stay, remain, lodge. To settle oneself or a thing in a place, to be stationed, to remain or stay, to dwell for a time ...

*Id*. (citations omitted).

From the evidence before us, it is clear that Mr. Jordan presently resides in Massachusetts. From his own sworn statement in the Motion to Dismiss filed March 8, 2002, Mr. Jordan admits that he is "staying in Massachusetts where he is currently working." Although Mr. Jordan qualifies this statement with the word "temporarily," as noted above, the issue is not whether he intends to stay in Massachusetts (that would go to the issue of domicile), nor whether he has a residence in Alabama (one may have more than one residence). But even if a person has several homes, no one can be at two places at once. Consequently, a person may presently reside only at one of his or her homes. Therefore, the question is simply this: where was Mr. Jordan residing when this action commenced? The evidence before us yields only one answer and that is Massachusetts. The comment to the official text states in pertinent part: "In other words, a court of the modification state can determine that all parties have moved away from the original state."

*Jordan*, 2003 WL 1092877, at *7.

Although different in fact and outcome, the ***Staats***, ***Arendale***, and ***Jordan*** cases, like the case at bar, all involve the distinction between where a person has his or her domicile, and where that person resides. The distinction between these terms is subtle, but important

-13-

in terms of the legal implications.  In his <u>A Dictionary of Modern Legal Usage</u> (2d ed. 1995), Bryan A. Garner explains the meaning, and confusion surrounding, the word "domicile":

> The two words [i.e., "domicile," and "residence"] are often "confused as synonymous." ***In re Lemen***, 208 F.80, 82 (N.D. Ohio 1912).  They are not: "*Residence*" comprehends no more than a fixed abode where one actually lives for the time being.  It is distinguished from *domicile* in that *domicile* is the place where a person intends eventually to return and remain. ***Catalanotto v. Palazzolo***, 259 N.Y.S2d 473, 475 (1965).
>
> More specifically, *domicile* means "the place with which a person has a settled connection for certain legal purposes, either because his home is there, or because that place is assigned to him by the law." *Restatement (First) of Conflicts of Laws* §9, at 17 (1934).

Bryan A. Garner, <u>A Dictionary of Modern Legal Usage</u> 291 (2d ed. 1995).

Mr. Garner goes on to explain, in his definition of "residency," how the distinction between "domicile" and "reside" is further complicated by the common practice of using "residence" and/or "residency" interchangeably with "domicile," to wit:

> Although both [i.e., "residence" and "residency"] are used in the sense of "domicile,' only *residence* is used as a FORMAL WORD–some would say pomposity–for "house"....
> It would be useful to restrict *residence* to that sense and to use *residency* in the sense [of] "domicile," but there is little consistency in today's usage....

*Id*. at 761.

"Residency," therefore, is the same as a person's domicile; however where a person resides (i.e., where a person has residence) is not, necessarily, the same as where he or she is domiciled (i.e., where a person has residency).

As set out in full context above, in its order, the Tennessee Court found that Ms. Moody continued to "reside" in Arkansas based, *inter alia*, upon the Tennessee Court's statement that Ms. Moody "maintained her nursing license and driver's license in Arkansas." In his brief, Mr. Highfall asserts that, as in ***Arendale***, the trial court erred:

> [I]n making a technical inquiry into the Mother's domicile and residency and relying upon where the Mother maintained her nursing license and driver's license.

Based upon the foregoing discussion, the fact that Ms. Moody maintained her nursing license and driver's license in Arkansas does not help with the question of where she resides; as noted in *Arendale* and *Jordan*, these facts might help to answer the question of where Ms. Moody is domiciled. However, as discussed above, the first criterion for subject matter jurisdiction, under both the UCCJEA and the UIFSA, hinges upon where a person presently resides, not upon where that person has his or her domicile or residency. Mr. Highfill is, therefore, correct that the Tennessee Court erred insofar as it based a determination of where Ms. Moody resides on technical inquiries concerning her domicile. However, this was not the trial court's sole inquiry. In its order, the Tennessee Court specifically states that its decision is also based on the "laws of residency," and notes that "residence is where you live rather than where you have your suitcase." As pointed out by Mr. Garner, to confuse a person's residency with where a person resides is a common mistake, and one which the trial court seems to have made. Because "residency" is synonymous with "domicile," the "laws of residency" (whatever those may be) would not be applicable to the pivotal question, in this case, of where Ms. Moody resides. That being said, the Tennessee Court's example that "residence is where you live rather than where you have your suitcase," is, at best, only half correct. While a person's residence is where they live, it may also be where they have their suitcase. "One may have many residences but only one domicile. Mere intent to make a particular place one's residence is insufficient to establish domicile. 'An appropriate action harmonizing with intent is necessary.'" *Anene v. Anene*, No. 03A01-9511-CV-00387, 1996 WL 557802 (Tenn. Ct. App., Oct. 2, 1996.), perm. app. denied (Tenn. April 7, 1997) (quoting *Brown v. Hows*, 163 Tenn. 178, 42 S.W.2d 210 (1931)).

Turning to the record, we again note that there is no transcript of the evidence adduced at the hearing in the Tennessee Court. Rather, the record contains a Tenn. R. App. P. 24(c) statement of the evidence, which provides, in pertinent part, as follows:

> The Court heard testimony from a non-party witness, namely, Jina Gentleman...with no opposition from [Mr. Highfill]....
> Ms. Gentleman testified on direct examination that she resided at 1566 Kirby Parkway, Memphis, Tennessee. That she met [Ms. Moody] through a friend named Robert. That Robert called her about a roommate looking for a temporary place for about three months. That [Ms. Moody] moved in with her in November, 2008 and moved out the last week of February,

-15-

2009. That [Ms. Moody] borrowed a couple of dressers from her and borrowed a bed from Robert. That [Ms. Moody] paid $500 per month and had no written lease document. That [Ms. Moody] traveled on weekends to Little Rock or other locations.

Ms. Gentleman testified on cross-examination that she assumed [Ms. Moody] had furnishings elsewhere but did not know....

\*                          \*                          \*

[Ms. Moody] was employed as a nurse and took job assignments in Jacksonville, North Carolina from April, 2008 to July, 2008; in Mesa, Arizona from August, 2008 to November, 2008; and in Memphis, Tennessee from December, 2008 to March 1, 2009.

The Court inquired as to where [Ms. Moody] maintained her nursing license and driver's license. Counsel for [Ms. Moody] advised the Court that she maintained her nursing license and driver's license in Arkansas, kept her voter's registration in Arkansas, and paid state income taxes in Arkansas.[6]

In addition to the foregoing testimony, Ms. Moody also provided the Tennessee Court with a "Residential Room Lease Agreement." This agreement provides, in relevant part, as follows:

The [Agreement] is entered into, this February 1, 2008 by and between:

The Lessor: **Heath and Marie Lehman** of **6 Sugarloaf Cv. Maumelle, AR 72113** (hereinafter "Landlord")
And the Lessee: **Heather Moody** of **6 Sugarloaf Cv. Maumelle, AR 72113** (hereinafter "Tenant")
In regards to the Property: Upstairs **Room at 6 Sugarloaf Cv. Maumelle, AR 72113** (hereinafter "Room")

\*                          \*                          \*

---

[6]From the record, it does not appear that Ms. Moody objected to Mr. Highfill's statement of the evidence.

-16-

Tenant shall use the Room for residential purposes....

\* \* \*

3. **Length of Agreement**
This Agreement shall begin February 1, 2008 and will remain in
effect until January 31st 2009 unless renewed or extended....

Under the particular facts of this case, it appears that, due to the nature of her job as a nurse, Ms. Moody frequently spent long periods of time away from the State of Arkansas. The record indicates that, after each of her assignments, she returned to Arkansas. Because jurisdiction attaches at the commencement of the proceeding, *see* Tenn. Code Ann. § 36-6-217 Cmt. 2, in the instant case, we need to determine where Ms. Moody resided on February 18, 2009, the date Mr. Highfill filed his petition with the Tennessee Court.

From the lease in evidence, we know that Ms. Moody maintained at least one residence at 6 Sugarloaf Cv. in Maumelle, Arkansas., which she rented from Heath and Marie Lehman. The statement of the evidence also indicates that, at the time of the commencement of the action in the Tennessee Court, Ms. Moody was renting a room at 1566 Kirby Parkway, Memphis, Tennessee, from Jina Gentleman. In fact, Ms. Moody was served with the Tennessee suit at the Kirby Parkway address.

Based upon the foregoing discussion of "domicile" versus "reside," the fact that Ms. Moody had a residence in Arkansas does not, *ipso fact*, mean that Arkansas was where she was residing at the time of the commencement of this action. Rather, the facts of the present case are very similar to those presented in ***Jordan***. Here, as was the situation in ***Jordan***, due to the nature of her job, Ms. Moody's resides only temporarily in other states. In responding to Mr. Jordan's contention that he was living only temporarily in Massachusetts, the ***Jordan*** Court noted that "the issue is not whether he intends to stay in Massachusetts (that would go to the issue of domicile), nor whether he has a residence in Alabama (one may have more than one residence). But even if a person has several homes, no one can be at two places at once. Consequently, a person may presently reside only at one of his or her homes." ***Jordan***, 2003 WL 1092877, at \*7. Likewise, the question here is simply this: where was Ms. Moody residing when this action commenced?

The fact that Ms. Moody had a residence in Arkansas, and maintained her driver's and nursing licenses there, indicates only that her domicile was in Arkansas. ***See Jordan***, 2003 WL 1092877 at \*7. However, the fact that, at the time of the filing of this suit, Ms. Moody was actually living in Memphis, and the fact that she was served at the Kirby Parkway address, lead us to conclude that, on the applicable date for determining jurisdiction (i.e.,

February 18, 2009), Ms. Moody was residing in Tennessee. Consequently, based upon the foregoing discussion, under both the UCCJEA and the UIFSA, the Arkansas Court's continuing, exclusive jurisdiction ended. Although we have determined that Arkansas's continuing, exclusive jurisdiction over the subject matter of this case ended (under both the UCCJEA and the UIFSA) because neither the child, nor Ms. Moody, nor Mr. Highfill resided in Arkansas at the commencement of this case, this determination is not dispositive as to the question of whether Tennessee has subject matter jurisdiction to modify the Arkansas decree. We will now address that issue.

## Tennessee's Subject-Matter Jurisdiction under the UCCJEA

As discussed above, in order for Tennessee to have subject matter jurisdiction to modify the Arkansas decree concerning child custody, not only does Arkansas have to lose its continuing, exclusive jurisdiction, but the Tennessee Court must also have jurisdiction to make an initial custody determination. Tenn. Code. Ann. §36-6-218.[7] As we have already found in this case, neither the child, nor either parent resided in the Arkansas on the date of the commencement of this action. We must now determine whether the second criterion–that the Tennessee court must have jurisdiction to make an initial determination under § 36-6-216(a)(1) or (2)–is met.

Tenn. Code Ann. § 36-6-216(a) reads, in pertinent part, as follows:

> (a) ... a court of this state has jurisdiction to make an initial child
> custody determination only if:
> (1) This state is the home state of the child on the date of the
> commencement of the proceeding ...

---

[7]Tenn. Code. Ann. § 36-6-218 provides:

> [A] court of this state may not modify a child-custody determination made
> by a court of another state unless a court of this state has jurisdiction to
> make an initial determination under § 36-6-216(a)(1) or (2) and:
>
> *                *                *
>
> (2) A court of this state or a court of the other state determines that the
> child, the child's parents, and any person acting as a parent do not presently
> reside in the other state.

-18-

T.C.A. § 36-6-205(7) defines "Home state" as follows: "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." In the instant case, we find that Tennessee is the minor child's home state. It is uncontested that Mr. Highfill and the child moved to Tennessee, and that they had lived here for well over six months before Mr. Highfill filed his petition. The definition of "Home state" is met in this case. Therefore, Tennessee would have the jurisdiction to make an initial custody determination and the second criteria is met. Consequently, we find that Tennessee has jurisdiction to modify the foreign decree under T.C.A. § 36-6-218.

Our determination that the trial court has jurisdiction over the case does not, however, end our inquiry. The question of whether Tennessee is an inconvenient forum has been subtly raised in Ms. Moody's brief. Unlike the UIFSA, the UCCJEA, allows a court to decline jurisdiction if the court finds that it is an inconvenient forum. Specifically, Tenn. Code Ann. § 36-6-222(a) provides:

> (a) A court of this state which has jurisdiction under this part to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.
>
> (b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
>
> > (1) The length of time the child has resided outside this state;
> > (2) The distance between the court in this state and the court in the state that would assume jurisdiction;
> > (3) The relative financial circumstances of the parties;
> > (4) Any agreement of the parties as to which state should assume jurisdiction;

(5) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(6) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;
(7) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; and
(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

In support of her argument that Tennessee is an inconvenient forum, Ms. Moody cites to Mr. Highfill's response to her petition to change venue that was filed with the Arkansas Court in 2005 (which petition was ultimately denied by the Arkansas Court's November 16, 2005 order). In his response, which was filed on October 4, 2005, Mr. Highfill moved the Arkansas Court to deny the motion to transfer venue, in relevant part, because "this case has a long history here in White County[, and] [t]he interests of justice will be better served by keeping the case in White County." Moreover, Mr. Highfill argued that, "[j]udicial economy would be better served by leaving the matter in White County due to the fact that the Court has heard the history of this case and should not burden another [court] with this case and its history." Ms. Moody appears to argue that, based upon his previous statements, Mr. Highfill cannot now contest the Arkansas venue. We disagree.

As noted above, the Arkansas Court has not issued an order in this case since the wage assignment order of November 30, 2005. Since that time, the circumstances have changed, and the Arkansas Court's ties to the case have lessened. Both the child and Mr. Highfill now live in Tennessee, and, at the commencement of the present action, Ms. Moody also resided in Memphis. More importantly, however, is the fact that, per the room lease agreement above, Ms. Moody's residence in Arkansas is in Maumelle, which is in Pulaski County, Arkansas. Consequently, at the time of the commencement of this action, neither Mr. Highfill, Ms. Moody, nor the child actually lived in White County, Arkansas. Moreover, the child has lived in Tennessee for several years. From the totality of the circumstance, and in

-20-

light of the foregoing factors, we conclude that the Tennessee Court is now the most convenient forum for this case.

Based upon the foregoing analysis, under the UCCJEA, we conclude that the Tennessee Court has subject-matter jurisdiction to enroll and modify the Arkansas Court's order as to child custody/visitation. We further conclude that the Tennessee Court is the most convenient forum under the circumstances. We now turn to discuss whether the Tennessee Court has jurisdiction to modify child support under the UIFSA.

### Tennessee's Subject Matter Jurisdiction under the UIFSA

As discussed in detail above, the UIFSA provides that the state issuing a support order has continuing, exclusive jurisdiction over that order. *See* Tenn. Code Ann. § 36-5-2205. Tenn. Code Ann. § 36-5-2613 provides, in pertinent part:

> **Jurisdiction to enforce or modify child-support order of another state when individual parties reside in this state**.
>
> (a) If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order.

Having determined above that, at the commencement of this action, both Mr. Highfill and Ms. Moody resided in Tennessee, Tenn. Code Ann. § 36-5-2613 is, in fact, applicable to this case. Because both parents resided in Tennessee at the commencement of the action, the Tennessee Court has subject matter jurisdiction to modify the child support order pursuant to Tenn. Code Ann, § 36-5-2613.

### Conclusion

Having concluded that the Tennessee Court has subject-matter jurisdiction to enroll and modify the Arkansas decree on child support and custody, we reverse the trial court's order, denying enrollment and/or modification, and remand the case for further proceedings to include enrollment of the Arkansas decree and further hearing on the merits of modification thereof. The costs of this appeal are taxed to the Appellee, Heather Highfill Moody for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE